UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IOVANCE BIOTHERAPEUTICS, INC., Plaintiff, v. FEDERAL INSURANCE COMPANY, Defendant. | Case No. 25-cv-00040-RFL<br>**REDACTED PUBLIC COPY**<br>**ORDER RESOLVING MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 56, 81 |

The parties do not dispute the following facts. Iovance develops cancer immunotherapy drugs. It partnered with five medical institutions to sponsor clinical trials. Clinical Trial Agreements (the "CTAs") governed the relationships between Iovance and these institutions. The CTAs contain two provisions relevant to this action. [redacted] Eight participants in the clinical trials across all five of the institutions experienced adverse events. The institutions treated the participants and then sought reimbursement for the cost of care from Iovance under the CTAs. None of the participants brought, or threatened to bring, claims against the institutions or Iovance.

Iovance ultimately resolved the reimbursement requests with all five institutions. Along the way, it sought insurance coverage from Federal, from whom Iovance had purchased claims made liability insurance. Federal denied coverage. Iovance subsequently commenced this action against Federal to recover. The parties now cross-move for summary judgment. Because the

insurance policies exclude coverage for Iovance's contractually owed reimbursements to the medical institutions, Federal's motion for summary judgment is **GRANTED**, and Iovance's motion for partial summary judgment is **DENIED AS MOOT**. This Order assumes that the reader is familiar with the facts of the case, the applicable legal standards, and the parties' arguments.[1]

***Contractual Exclusion.*** Though the parties raise disputes about the scope of coverage under various provisions, this Order does not reach those disputes because a contractual exclusion applies that precludes coverage in any event. The insurance policies exclude all coverage for contractual liability: "This insurance does not apply to any damages, loss, cost or expense for which the insured is obligated to pay damages by reason of assumption of liability in a contract or agreement." (Dkt. No. 43-3 at 44.)[2] Iovance does not dispute that this contractual exclusion generally bars coverage for payments made as a result of Iovance's contractual assumption of liabilities, unless a carveout to the contractual exclusion applies. *See, e.g.*, *Broughton v. Ohio Cas. Ins. Co.*, 533 F. Supp. 3d 838, 841 (N.D. Cal. 2021) (interpreting similarly worded exclusion to mean that insurance company "will generally not pay sums that the insured becomes legally obligated to pay because the insured assumed that obligation via contract").

Instead, Iovance argues that to the extent it seeks coverage under the Medical Expenses Coverage provision of the insurance policies, the contractual exclusion does not apply because Medical Expenses Coverage covers *expenses*, while the contractual exclusion concerns *damages*. This argument fails because the contractual exclusion expressly covers, among other things, an "expense" that was contractually assumed and for which the medical institutions could seek damages pursuant to the contract. There is also nothing inconsistent between Federal agreeing to

[1] All citations to page numbers in filings on the docket refer to ECF page numbers.

[2] The three insurance policies at issue contain identical language concerning the relevant provisions. Accordingly, this Order includes citations to only the 2022-2023 policy.

remit payment under the Medical Expenses Coverage "regardless of fault" (*see* Dkt. No. 43-3 at 31) and the application of the contractual exclusion. The exclusion does not require an examination of Iovance's fault or "the reason for Iovance's exposure to liability." (*See* Dkt. No. 81 at 29.) Finally, that the Medical Expenses Coverage provision applies only to those bodily injuries "not excluded under any section of" the policies does not create a negative implication that other types of exclusions are inapplicable. (*See* Dkt. No. 43-3 at 31.) The contractual exclusion broadly applies to "[t]his insurance." (*See id.* at 44.) That is capacious enough to cover the Medical Expenses Coverage provision included in the insurance policies.

The contractual exclusion also contains two carveouts:

> This exclusion does not apply to the *liability for damages for bodily injury or property damage* to which this insurance applies: [1] that such insured would have in the absence of such contract or agreement; or [2] assumed in an oral or written contract or agreement that is an insured contract, provided the bodily injury or property damages occurs after the execution of such contract or agreement.

(*Id.* (emphasis added).) Neither carveout applies here because the requests for payment that the medical institutions sought from Iovance under the CTAs did not stem from any liability for "damages for bodily injury." Rather, those payment requests represented attempts to collect [redacted] for the cost of medical care provided to participants in the clinical trials. True, the institutions provided this medical care after the participants experienced bodily injuries. But Iovance's obligation to cover the cost of that care arose from contractual liability to the institutions, not from liability for damages for bodily injury. Indeed, Iovance's obligation to pay could not have flowed from any liability for damages for bodily injury because, as Iovance does not dispute, none of the participants in the clinical trials brought, or threatened to bring, claims against the institutions or Iovance. Thus, while Iovance may have found itself liable for bodily injury [redacted], the institutions necessarily could not have been requesting reimbursement from Iovance under those provisions because there were no third-party claims for

bodily injury to indemnify. Instead, the institutions merely sought [redacted] payments. That is not liability for damages for bodily injury.

The correspondence between the institutions and Iovance regarding the reimbursement requests confirms that the institutions did not seek indemnification for third-party claims:

- **University of Chicago.** [redacted]
- **Roswell Park.** [redacted]
- **University of Maryland.** [redacted]
- **UCLA.** [redacted]

[redacted]

- **Yale.** [redacted]

Iovance argues that the institutions could not have been requesting payment under [redacted] because those provisions [redacted] and [redacted] (*See* Dkt. No. 75-3 at 25.) But whether the institutions interpreted the CTAs correctly and could properly recover under the [redacted] is beside the point. What matters is under which provisions of the CTAs they sought recovery, and on this record, there is no genuine dispute of material fact that they sought recovery under the [redacted].

Iovance also argues that the institutions' decision to seek recovery under a contract theory as opposed to a tort theory is not dispositive under California law. It relies on the following language from *Vandenberg v. Superior Court*, 21 Cal. 4th 815 (1999): "Coverage under a [commercial general liability] insurance policy is not based upon the fortuity of the form of action chosen by the injured party." *Id.* at 838. But *Vandenberg* addresses a fundamentally different question of how to interpret a general coverage provision for liability insurance. There, a landowner sued a lessee for property damage. The parties arbitrated their dispute, and the landowner received a damages award under a breach of contract theory. When the lessee sought

insurance coverage from its insurers, the insurers denied coverage despite the lack of any express exclusions for contractual damages. The insurers relied on "a general rule of noncoverage for contractual damages" in commercial general liability insurance policies that covered "sums [an insured] was legally obligated to pay as damages." *See id.* Under that general rule, "legally obligated to pay as damages" had been interpreted to "refer to tort liability and not contractual liability." *See id.* The California Supreme Court rejected the general rule and held that such coverage could apply to contractual damages. In reaching this conclusion, the court applied "the ordinary and popular" interpretation of the phrase "legally obligated to pay as damages." *See id.* at 840.

By contrast, this case involves an express contractual exclusion, not a question of how to interpret a general coverage provision. Indeed, the Court of Appeal in *Vandenberg* (whose judgment the California Supreme Court affirmed) recognized the availability of an exclusion to remove a class of claims otherwise within the scope of coverage: "If an insurer wished to avoid coverage in all cases in which a contract cause of action or measure of damages is pursued, it would be a simple matter . . . to include a specific provision excluding coverage for 'damages awarded in contract.'" *Vandenberg v. Superior Court*, 69 Cal. Rptr. 2d 511, 520 n.9 (Ct. App. 1997). That is precisely what Federal did here.

Moreover, even if *Vandenberg* were properly applied to an express contractual exclusion, coverage would hinge on whether the medical institutions could have pursued their requests for reimbursement on a non-contract theory. Iovance argues that the institutions could have proceeded under a tort theory, but there is no evidence in the record that the institutions providing medical care to a patient could proceed under a tort theory to recover the cost of care from Iovance as a third party that potentially caused the patient's injury. Iovance's cited cases involved patients suing hospitals and manufacturers for their injuries, and the courts there held that the hospitals could seek indemnity or contribution from the manufacturers.[3] *See Air Shields,*

[3] Iovance argued for the first time at oral argument that the institutions could have sought recovery under the tort theory of equitable subrogation. That argument was waived because it

*Inc. v. Spears*, 590 S.W.2d 574, 582 (Tex. Ct. App. 1979); *Helmrich v. Eli Lilly & Co.*, 455 N.Y.S.2d 460, 462-63 (4th Dep't 1982). Here, however, none of the injured participants in the clinical trials brought claims against the institutions or Iovance. Nor did the institutions seek recovery under any duty that Iovance owed independent of the CTAs. Thus, on the undisputed record, it does not appear that the institutions' requests for reimbursement from Iovance could have taken any form other than one sounding in contract. That distinguishes this case from *Great Northern Insurance Company v. Crown Pine Timber 4, L.P.*, No. 18-cv-02104-YY, 2021 WL 38187 (D. Or. Jan. 5, 2021), and *Local Initiative Health Authority v. OneBeacon Professional Insurance, Inc.*, No. 16-cv-04810-VAP, 2017 WL 3579491 (C.D. Cal. July 7, 2017), because in each of those cases, the third party bringing claims against the insured party could have potentially sought recovery outside of a contract theory. *See* 2021 WL 38187, at *16; 2017 WL 3579491, at *12.

The Court is not unsympathetic to Iovance's position. It foresaw the possibility of injury, appears to have procured insurance with the desire to guard against that risk, and then sought coverage once injuries occurred. But its insurance does not apply to contractual claims, and that is exactly the coverage now sought. Adopting Iovance's position would create a "moral hazard" by incentivizing insured parties to adopt overly generous agreements that sweep beyond the scope of any actual tort liability, knowing that their insurers would foot the bill. *See Adelman v. U.S. Specialty Ins. Co.*, No. 21-cv-02758-JST, 2021 WL 6427920, at *5 (N.D. Cal. Nov. 17, 2021). "No rational insurer would wish to undertake such an insuring obligation." *Oak Park*

---

was not raised in the briefs. Moreover, equitable subrogation does not fill the gap at issue. Using the California version of the doctrine as an example, equitable subrogation applies when "one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." *See Church Mut. Ins. Co., S.I. v. GuideOne Specialty Mut. Ins. Co.*, 72 Cal. App. 5th 1042, 1066 (2021). But, as noted above, there is no evidence that, absent the [redacted] in the CTAs, Iovance was primarily liable for the participants' medical expenses, such that it should, in equity and good conscience, reimburse the institutions for those expenses. Indeed, at oral argument, Iovance conceded that study participants seeking medical expenses under a tort theory would have to demonstrate additional facts about Iovance's fault and knowledge, which were not required under the broad [redacted] of the CTAs.

*Calabasas Condo. Ass'n v. State Farm Fire & Cas. Co.*, 137 Cal. App. 4th 557, 565 (2006). And under a plain reading of the insurance policies, Federal did not do so here.

***Disposition of Claims.*** Because the insurance policies expressly exclude coverage for the medical institutions' requests for reimbursement from Iovance, summary judgment in favor of Federal is appropriate on Iovance's claims for breach of contract, breach of implied covenant of good faith and fair dealing, and declaratory relief. *See, e.g.*, *Dunbar v. USAA Cas. Ins. Co.*, No. 20-cv-08176-ODW, 2021 WL 1946777, at *5-6 (C.D. Cal. May 14, 2021).

Iovance argues that Federal breached the duty to defend even if the contractual exclusion placed the medical institutions' requests for recovery outside the scope of the insurance policies. The duty to defend

> exists where extrinsic facts known to the insurer suggest that the claim may be covered. Moreover, that the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability. . . . When the duty, having arisen, is extinguished by a showing that no claim can in fact be covered, it is extinguished only prospectively and not retroactively.

*Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654-55 (2005) (citations and quotation marks omitted); *see also Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276-77 (1966) ("An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy."). Critically, however, "[p]rior to the filing of a complaint, there is nothing for the insured *to tender defense of*, and hence no duty to defend arises." *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 886 (1998) (emphasis in original). Thus, where an insured tenders a claim before the commencement of a proceeding in which the insurance company must defend it, the duty to defend does not attach. *See, e.g.*, *Ironshore Specialty Ins. Co. v. 23andMe, Inc.*, No. 14-cv-03286-BLF, 2016 WL 3951660, at *7 (N.D. Cal. July 22, 2016).

Here, Iovance does not dispute that neither the patients nor the institutions commenced suit against it. It did attend a mediation with the University of Chicago, and the insurance

policies treat alternative dispute resolution proceedings "in which damages, *to which this insurance applies*, are sought," as "suits" in which Federal must defend Iovance. (*See* Dkt. No. 43-3 at 32, 76 (emphasis added).) But as discussed above, Iovance's correspondence with the University of Chicago indicates that the university sought recovery under only the [redacted] of its CTA with Iovance.[4] Moreover, neither letter from the university suggested that any third party brought or threatened to bring claims against the university for which it could seek indemnity from Iovance. (*See* Dkt. Nos. 19-8, 55-13.) Accordingly, in light of the contractual exclusion, the requested reimbursement was not damages to which the insurance policies applied, so the mediation was not a "suit," and Federal was not under a duty to defend Iovance in that mediation. For the same reason, it was not "reasonably inferable, or otherwise known," that the university's reimbursement request "could fairly be amended to state a covered liability." *Scottsdale*, 36 Cal. 4th at 654. Nor is the exclusionary clause here ambiguous, such that the insured "would reasonably expect" their insurance policy to apply and their insurer to defend them. *Zurich*, 65 Cal. 2d at 268-74.

***Conclusion.*** For the foregoing reasons, Federal's motion for summary judgment is **GRANTED**, and Iovance's motion for partial summary judgment is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: May 21, 2026

RITA F. LIN
United States District Judge

[4] At oral argument, Iovance asserted that, in its mediation brief, the University of Chicago invoked the [redacted] of its CTA with Iovance. Even assuming that the mediation privilege did not bar consideration of that evidence (*see* Fed. R. Evid. 408), Iovance conceded that the mediation brief is not part of the summary judgment record.